IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY A. BANKS-BENNETT, | : | 1: CV-01-1241 |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| INGRAM MICRO U.S.; INGRAM | : | JUDGE KANE |
| MICRO BRANCH #80 GENERAL | : | |
| MANAGER KEN GOODWIN (in their | : | |
| official and individual capacity); | : | |
| VICKI SMITH, SENIOR HUMAN | : | |
| RESOURCE GENERALIST (in her | : | |
| official and individual capacity); | : | |
| BILL MUNLEY, MANAGER AT | : | |
| SHIPPING DEPARTMENT, (in his | : | |
| official and individual capacity); | : | |
| | : | |
| Defendants | : | |

## DEFENDANT'S REQUEST FOR ADMISSIONS TO PLAINTIFF

Defendants, Ingram Micro, by their counsel, Paul J. Dellasega of THOMAS, THOMAS & HAFER, LLP, pursuant to Pennsylvania Rule of Civil Procedure 4014 hereby request that Plaintiff, Shirley A. Banks-Bennett, make the following admission within thirty (30) days after service for the purpose of this action only.

You are warned that the matter stated below will be <u>conclusively admitted</u> pursuant to Pennsylvania Rule of Civil Procedure 4014(d) unless, within 30 days after service, you serve sworn answers or objections upon the undersigned as counsel for the Plaintiffs.

1. Barry Wharton was employed in August 1997 by Ingram Micro as Repack Manager. In that capacity he supervised approximately forty employees. Of those forty employees, six were temporary – meaning that they were not officially employed by Ingram Micro but were employed by a temporary employment agency, whose services Ingram Micro utilized.

2. A temporary employee has no right to continued employment with Ingram Micro and works at Ingram Micro's request on a day to day basis.

3. In August 1997 Wharton developed three vacancies for full time employees in his department. In his position as Repack Manager, he had the ability to effectively recommend to Human Resources the individuals he would like to see working for him and to have them hired as permanent employees.

4. When Wharton was considering who to hire, he referred to his Labor Trackers. The Labor Trackers show on an objective basis the production levels of each employee over a set period of time, weekly, monthly, or daily.

5. A review of the Labor Tracker Record shows that all of the employees had production levels that were pretty close to being equal and there were no significant differences that made one employee standout over another.

6. Three of Wharton's temporary employees, Gloria Chavac, Teresa Chavac, and Piedad Lara, impressed Wharton because at the end of each night he noticed that they always:

    (a) Continue to recon products, an important function of his department.

    (b) Continue to clean up their work area.

(c)  Without being told or instructed, finished up all of the duties they had been assigned so at the end of the shift there were no concerns as to the satisfactory completion of their assigned duties.

7.  For these reasons Wharton thought that these three individuals would make excellent permanent employees.

8.  In August 1997 Wharton went to the Human Resources Department and relayed the foregoing information to Vicki Smith, the Human Resources Manager. He asked permission to extend offers of permanent employment to these three women. As was the custom and routine, he was given permission to hire the employees he had recommended.

9.  Wharton has never heard of Shirley Banks-Bennett prior to the institution of this federal court law suit. Wharton has been advised that she was a temporary employee who performed box making functions for Ingram Micro. Box making functions are not one of the jobs that were within Wharton's responsibility. Wharton additionally was completely unaware of the fact that Banks-Bennett had filed a PHRC Complaint.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

By: *[signature]*
Paul J. Dellasega, Esquire
Atty. No.: 73146
305 North Front Street
Sixth Floor, P.O. Box 999
Harrisburg, PA 17108
(717) 255-7602

Attorneys for Defendants

DATE: NOV 0 8 2001

## CERTIFICATE OF SERVICE

I, Susan L. Horstick, Legal Secretary for Thomas, Thomas & Hafer, LLP, hereby certify that a copy of the foregoing document was served upon the following, by enclosing a true and correct copy in an envelope addressed as follows, postage prepaid:

Shirley A. Banks-Bennett
2649 Waldo Street
Harrisburg, PA  17110

                                                 **THOMAS, THOMAS & HAFER, LLP**

By: _____Susan L. Horstick_____
                          SUSAN L. HORSTICK, Legal Secretary

DATED:  November 8, 2001

IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY A. BANKS-BENNETT, | : | 1: CV-01-1241 |
| Plaintiff | : | |
| v. | : | |
| INGRAM MICRO U.S.; INGRAM MICRO BRANCH #80 GENERAL MANAGER KEN GOODWIN (in their official and individual capacity); VICKI SMITH, SENIOR HUMAN RESOURCE GENERALIST (in her official and individual capacity); BILL MUNLEY, MANAGER AT SHIPPING DEPARTMENT, (in his official and individual capacity); | : | JUDGE KANE |
| Defendants | : | |

### DEFENDANT'S SECOND REQUEST FOR ADMISSIONS TO PLAINTIFF

Defendants, Ingram Micro, by their counsel, Paul J. Dellasega of THOMAS, THOMAS & HAFER, LLP, pursuant to Pennsylvania Rule of Civil Procedure 4014 hereby request that Plaintiff, Shirley A. Banks-Bennett, make the following admission within thirty (30) days after service for the purpose of this action only.

You are warned that the matter stated below will be <u>conclusively admitted</u> pursuant to Pennsylvania Rule of Civil Procedure 4014(d) unless, within 30 days after service, you serve sworn answers or objections upon the undersigned as counsel for the Plaintiffs.

1. Plaintiff was assigned to work at Defendant's facility by the Drexel Group, Inc., a temporary employment agency. While working at Defendant's facility, Plaintiff at all times remained an employee of the temporary employment agency.

2. As an employee of the temporary employment agency, Plaintiff was never an employee of the Defendant.

3. Under the agreement between Defendant and the Drexel Group, Inc., a temporary employee of Drexel, assigned to work for Ingram Micro, may be removed from that assignment by either Ingram Micro or Drexel at the option of either and without advance notice.

4. On August 13, 1997, Defendant Vicki Smith did not state to the Plaintiff that "Why would you (Plaintiff) want to work for us."

5. On August 13, 1997, Plaintiff did not state to Defendant Vicki Smith, "You don't have the right to discriminate against me."

6. On August 18, 1997, Ingram Micro did not refuse Plaintiff employment in retaliation for her filing a claim for discrimination.

7. On September 29, 1997, Ingram Micro did not discharge Plaintiff in retaliation for filing a Complaint of discrimination.

8. Peter Hoffman never told the Plaintiff that if it was up to him, she would be hired "today".

9. Plaintiff was not refused employment because of any complaining. To the contrary, Plaintiff's employment ended when the work assignment she was given came to an end.

2

10. Since the filing of this Complaint, Plaintiff has been totally disabled.

11. Since the filing of this Complaint, Plaintiff has been disabled from any type of work available at Ingram Micro with or without reasonable accommodation.

12. In August 1997, Barry Wharton was employed by Ingram Micro as Repack Manager. In that capacity Wharton supervised approximately forty employees. Of those forty employees, six were temporary employees – meaning that they were not officially employed by Ingram Micro but were employed by a temporary employment agency, whose services Ingram Micro utilized.

13. A temporary employee has no right to continued employment with Ingram Micro and works at Ingram Micro's request as an employee of the employment agency on a day by day basis.

14. Sometime in August 1997 Wharton developed three vacancies for full time employees in his department. In his position as Repack Manager, Wharton had the ability to effectively recommend to Human Resources the individuals he would like to see working for him and to have them hired as permanent employees.

15. When Wharton was considering who to hire, he reviewed his department's Labor Trackers. The Labor Trackers show on an objective basis the production levels of each employee or temporary employee over a set period of time, weekly, monthly, or daily.

16. A review of the Labor Tracker Records show that all of the employees in his department had production levels that were pretty close to being equal and there were no significant differences that made one employee stand out over another.

17. Wharton had three temporary employees named Gloria Chavec, Teresa Chavec, and Piedad Lara. These three employees impressed Wharton because at the end of each night he noticed that they always:

(a) Continue to recon products, an important function of the department;

(b) Continue to clean up their work area; and

(c) Without being told or instructed, finished up all of the duties they had been assigned so at the end of the shift there were no concerns as to the satisfactory completion of their assigned duties.

18. For the reasons outlined in the preceding paragraph, Wharton thought that these three individuals would make excellent permanent employees.

19. On a date in August 1997, Wharton went to the Human Resources Department and relayed all the foregoing information to Vicki Smith, the Human Resources Manager. Wharton asked for the OK to extend offers of permanent employment to these three ladies and was given permission to do that, as was the custom and routine when he made the recommendation that someone be hired.

20. Wharton has never heard of Shirley Banks-Bennett prior to the institution of this litigation.

21. Subsequent to the institution of this litigation, Wharton was advised that Banks-Bennett was a temporary employee who had performed box making functions for Ingram Micro. Box making functions are not one of the jobs that fall within Wharton's responsibility. Wharton had never heard of Banks-Bennett or the fact that she had filed

a PHRC Complaint at the time he made the recommendation to hire the three other female minority temporary employees.

                                    Respectfully submitted,

                                    THOMAS, THOMAS & HAFER, LLP

                              By: _____
                                  Paul J. Dellasega, Esquire
                                  Atty. No.: 28146
                                  305 North Front Street
                                  Sixth Floor, P.O. Box 999
                                  Harrisburg, PA 17108
                                  (717) 255-7602

APR 16 2003
DATE: _____        Attorneys for Defendants
148621v2

5

IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHIRLEY A. BANKS-BENNETT,** : | 1: CV-01-1241 |
| : | |
| *Plaintiff* : | |
| : | |
| v. : | |
| : | |
| **INGRAM MICRO U.S.; INGRAM** : | **JUDGE KANE** |
| **MICRO BRANCH #80 GENERAL** : | |
| **MANAGER KEN GOODWIN** *(in their* : | |
| *official and individual capacity);* : | |
| **VICKI SMITH, SENIOR HUMAN** : | |
| **RESOURCE GENERALIST** *(in her* : | |
| *official and individual capacity);* : | |
| **BILL MUNLEY, MANAGER AT** : | |
| **SHIPPING DEPARTMENT,** *(in his* : | |
| *official and individual capacity);* : | |
| : | |
| *Defendants* : | |

## DEFENDANT'S THIRD REQUEST FOR ADMISSIONS TO PLAINTIFF

Defendants, Ingram Micro, by their counsel, Paul J. Dellasega of THOMAS, THOMAS & HAFER, LLP, pursuant to Federal Rules of Civil Procedure hereby request that Plaintiff, Shirley A. Banks-Bennett, make the following admission within thirty (30) days after service for the purpose of this action only.

You are warned that the matter stated below will be <u>conclusively admitted</u> pursuant to Federal Rules of Civil Procedure unless, within 30 days after service, you serve sworn answers or objections upon the undersigned as counsel for the Plaintiffs.

1.  Barry Wharton is currently employed by Ingram Micro as Admin Quality Manager.

2.  Barry Wharton was employed by Ingram Micro on August 1997 as Repack Manager. In that capacity Wharton supervised approximately forty employees. Of those forty employees, six were temporary employees – meaning that they were not officially employed by Ingram Micro but were employed by a temporary employment agency, whose services Ingram Micro utilized.

3.  A temporary employee has no right to continued employee with Ingram Micro and works at Ingram Micro's request on a day by day basis.

4.  In August 1997 Wharton identified the need to fill three vacancies for full time employees in his department. In this position as Repack Manager he had the ability to effectively recommend to Human Resources the individuals he would like to see working for him and to have them hired as permanent employees.

5.  When Wharton was considering who to hire he referred to his Labor Trackers. The Labor Trackers show on an objective basis the production levels of each employee over a set period of time, weekly, monthly, or daily.

6.  A review of the Labor Tracker records showed that all of the employees had production levels that were pretty close to being equal and that there were no significant differences that made one employee stand out over another.

7.  Three of the people supervised by Wharton, Gloria Chavez, Theresa Chavez and Piedad Lara, impressed Wharton because at the end of each night he noticed that they always:

   (a)  Continued to recon products, an important function of the department.

   (b)  They continue to clean up their work area.

2

(c) They continued without being told or instructed to finish up all of the duties that had been assigned so that at the end of the shift there were no concerns as to the satisfactory completion of their assigned duties.

8. For the reasons stated in the proceeding paragraph Wharton thought these three individuals would make excellent permanent employees.

9. In August 1997, Wharton went to Human Resources and relayed all of the foregoing information to Vicki Smith, the HR Manager. Wharton asked for permission to extend offers of permanent employment to these three Hispanic women and was given permission to do that, as was the custom and routine when he wanted to hire someone.

10. Wharton had never heard of an individual named Shirley Banks-Bennett at any time prior to January 1, 2000.

11. Box making functions are not one of the jobs that were within Wharton's area of responsibility.

12. Since Wharton had never heard of Banks-Bennett or the fact that she had filed a PHRC Complaint, Wharton's decision to hire the three Hispanic women referred to herein was unrelated to Banks-Bennett's PHRC Complaint.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

Dated: 7/11/13

By: _____
Paul J. Dellasega, Esquire
Atty. No. 23146
305 North Front Street
Sixth Floor, P.O. Box 999
Harrisburg, PA 17108
(717) 255-7602
Attorneys for Defendants

3

## CERTIFICATE OF SERVICE

I, Susan L. Horstick, Legal Secretary for Thomas, Thomas & Hafer, LLP, hereby certify that a copy of the foregoing document was served upon the following, by enclosing a true and correct copy in an envelope addressed as follows, postage prepaid:

Shirley A. Banks-Bennett
2649 Waldo Street
Harrisburg, PA 17110

THOMAS, THOMAS & HAFER, LLP

By: *Susan L. Horstick*
SUSAN L. HORSTICK, Legal Secretary

DATED: 9-11-03